**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

SHAWNIKA BELL                                                                PLAINTIFF

v.                                                          Civil No. 1:19cv277-HSO-JCG

GULFPORT HEALTHCARE, LLC
*doing business as* GULFPORT
CARE CENTER                                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION [33] FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the Motion for Summary Judgment [33] filed by

Defendant Gulfport Healthcare, LLC d/b/a Gulfport Care Center on September 2,

2020.  This Motion is fully briefed.  Having considered Defendant's Motion [33] on

its merits, the related pleadings, the record, and relevant legal authority, the Court

is of the opinion that the Motion [33] for Summary Judgment should be granted,

and that Plaintiff's claims should be dismissed with prejudice.

## I. BACKGROUND

A.    Factual background

This dispute arises out of Plaintiff Shawnika Bell's ("Plaintiff" or "Ms. Bell")

allegation that she was wrongfully terminated from her employment in violation of

the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. (hereinafter "FMLA").

This case is set for a bench trial before the Court in February 2021.  Min. Entry, March 20, 2020.

The evidence, viewed in the light most favorable to Ms. Bell, reflects that she began working as a certified nursing assistant for Defendant Gulfport Healthcare, LLC d/b/a Gulfport Care Center ("Defendant" or "Gulfport Care") on February 25, 2014.  Compl. [1] at 1; Depo. of Bell [33-1] at 4.  Ms. Bell remained in the same position throughout her five-years with Gulfport Care.  Depo. of Bell [33-1] at 4. Her immediate supervisor was Jack Grove ("Mr. Grove"), who served as the administrator for Gulfport Care.  Decl. of Jack Grove [33-2].

Gulfport Care's employment policies are set forth in its Employee Handbook ("Handbook"), which Ms. Bell acknowledged receiving on February 25, 2014.  Ex. B-2 [33-2] at 23.  Among other things, the Handbook specifies company policies governing an employee's conduct at work, including the following policy relating to absenteeism and tardiness:

> [a]bsenteeism and tardiness place a burden on other employees and on the Facility. In the rare instances when employees cannot avoid being late to work or are unable to work as scheduled, they should notify their . . .  Supervisor as soon as possible in advance of the anticipated tardiness or absence. . . Poor attendance and excessive tardiness are disruptive. Either may lead to disciplinary action, up to and including termination of employment.

*Id*. at 18.

The Handbook sets forth Gulfport Care's policies regarding employment, attendance, and disciplinary action.  *Id*.  For example, the Handbook provides that employment with Gulfport Care is "at-will" and that "both the employee and the

Facility have the right to terminate employment at will, with or without cause or advance notice." *Id.* The Handbook identifies various examples of unacceptable conduct which may serve as grounds for termination, including violation of a company policy or "[o]ne unexcused absence from work without notice," as well as "habitual absences or tardiness, even if excused." *Id.*; *see* Decl. of Jack Grove [33-2]. The Handbook contains additional information regarding Gulfport Care's approaches to disciplinary action, including "oral warning, written warning, suspension with or without pay, or termination of employment – depending on the severity of the problem and the number of occurrences." Ex. B-1 [33-2] at 17. It also reflects that Gulfport Care "may use progressive discipline in Management's discretion." *Id.*

With respect to the FMLA, the Handbook permits a leave of absence without pay to eligible employees under the following circumstances:

> [i]f you are temporarily unable to work due to a serious health condition, or if you need to provide parental care for a son or daughter within the first 12 months of the child's birth, to provide parental care for a son or daughter who is placed with you for adoption or foster care within the first 12 months of the placement of the child; or to care for a child, spouse, or parent with a serious health condition. A serious health condition means an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, hospice, or residential medical care facility; or continuing treatment by a health care provider, and includes temporary disabilities associated with pregnancy, childbirth, and related medical conditions.

*Id.* at 14. The Handbook further provides that:

> [i]f leave is for the birth or placement of a child or for planned medical treatment, you must make your leave request to your supervisor at least 30 days in advance of the date leave is to begin, unless such notice is not

3

practicable because of the circumstances, and then you must give notice as soon as possible.

A healthcare provider's statement must be submitted verifying the need for medical leave and its beginning and expected ending dates. Any changes in this information should be promptly reported to the Facility. Employees returning from medical leave must submit a healthcare provider's verification of their fitness to return to work.

*Id.*

In February 2015, Ms. Bell requested FMLA leave for the birth of her child, which Gulfport Care approved. Ex. B-6 [33-2] at 31-37. Ms. Bell testified that she could go to Gulfport Care's Human Resources Department if she had any questions about completing her FMLA paperwork. Depo. of Bell [33-1] at 20-21. Ms. Bell also requested FMLA leave in 2017 for surgery. *Id.* Ms. Bell testified that she initially called Mr. Grove and told him she was having chest pains and was requesting FMLA leave.[1] *Id.* at 40-41. When she returned to work, Ms. Bell submitted her doctor's note and completed the FMLA leave paperwork, which Gulfport Care again approved. *Id.*; *see* Ex. [33-2] at 40-47. Although Ms. Bell testified that she could not recall the Handbook policies for requesting FMLA leave or for calling in sick, she stated that, based on her experience requesting FMLA leave in 2015, she was familiar with the procedures for requesting FMLA leave in 2017. Depo. of Bell [33-1] at 20.

---

[1] The parties dispute whether Ms. Bell's reason for missing work was related to her having chest pains and going to the emergency room. D. Mem. [34] at 7. Gulfport Care asserts that Ms. Bell's absence was "erroneously documented" as an "excused absence" in the system. *Id.*; *see* Decl. of Jack Grove [33-2]. However, this dispute is not material to the resolution of Gulfport Care's Motion.

4

According to Gulfport Care, during her five years working for Gulfport Care, Ms. Bell was tardy on more than thirty-five occasions.  *See* Ex. B-10 [33-2] at 50-63. Ms. Bell does not dispute that she was tardy to work on a number of occasions, frequently arriving later than 6:00 a.m., the time she was scheduled to work.  Depo. of Bell [33-1] at 27.  There is no dispute that Ms. Bell's supervisor counseled her on several occasions concerning the importance of regular attendance.  *See* Ex. B-11 [33-2] at 64; Ex. B-12 [33-2] at 65.

In September 2014, Ms. Bell received a written warning for unsatisfactory behavior towards employees.  *See* Ex. B-8 [33-2] at 48; Decl. of Bell [38-1] at 1.  She also received a written warning in January 2019 for a violation of company policies for failing to complete documentation before her shift ended.  *See* Ex. B-12 [33-2] at 65; Decl. of Bell [38-1] at 1.  Ms. Bell received another written warning in January 2019 for substandard work quality because she had refused to empty a colostomy bag for a patient.  Ex. B-11 [33-2] at 64.  Ms. Bell does not dispute that she received these written warnings.  Depo. of Bell [33-1] at 27-28.

As a result of her repeated tardiness and absences, on January 3, 2019, the Director of Nursing, Krysten Poole ("Ms. Poole"), and her supervisor Mr. Grove, informed Ms. Bell that her shift would change to a "Flex" schedule, in which the certified nursing assistants worked 12 hour shifts, alternating three-day and four-day work weeks.[2]  *See* Ex. B-13 [33-2] at 66; Decl. of Bell [38-1] at 1; Depo. of

---

[2] Gulfport Care uses the term "Flex" when an employee who is scheduled to work can nevertheless be told by the supervisor not to come in due to a lack of need on that particular day.  *See* Depo. of Krysten Poole [33-4] at 2.

Krysten Poole [33-4] at 2.  Mr. Grove testified that he and Ms. Poole had decided not to move forward with any disciplinary action against Ms. Bell for absenteeism and tardiness at that time.  Depo. of Jack Grove [33-3] at 47.  Instead, they "wanted to meet with Bell and offer her an alternative to see if that would correct the issue." Depo. of Jack Grove[3] [33-3] at 47-48.

A Flex Memo, *see* [33-2] at 66, identified the goals of the 12-hour schedule change, including "[p]rovid[ing] a better work-life balance . . ., enhancing work experience and giving more time to spend with family," *id.*  Nothing in the Memo [33-2] indicated that Ms. Bell's new duties or schedule were created for a disciplinary purpose.  Mem. [33-2].  Instead, Ms. Bell's position was moved to a different floor and her working hours changed from 6:00 a.m. to 2:00 p.m. to 7:00 a.m. to 7:00 p.m.  Decl. of Jack Grove [33-2] at 6; Depo. of Bell [33-1] at 7-8.  Mr. Grove and Ms. Poole gave Ms. Bell 24 hours to decide whether to accept the Flex schedule.  *See* Depo. of Bell [33-1] at 66-67.  On January 30, 2019, Ms. Bell signed the Memo and agreed to the Flex schedule.  Ex. B-13 [33-2] at 6; *see* Decl. of Jack Grove [33-2] at 6.

On February 15, 2019, Gulfport Care marked Ms. Bell's absence from work as "unexcused," Ex. B-10 [33-2] at 63, although Ms. Bell takes the position that she was "flexed on the 15," *see* Depo. of Bell [33-1] at 52.  On February 16, 2019, Ms. Bell took her son to the emergency room of Memorial Hospital at Gulfport for

---

[3] When citing to Mr. Grove's deposition transcript, the Court refers to Gulfport Care's Exhibit C [33-3], attached to its Memorandum in support of its Motion, as opposed to Ms. Bell's Exhibit 10 [38-10], attached to her Response because the page numbers in the latter are combined, making it difficult to pinpoint cites.  The contents of these Exhibits are identical.

influenza.  *See* Ex. 8 [38-8] at 1-3; Ex. 9 [38-9] at 1; Depo. of Bell [33-1] at 40-41;

Decl. of Bell [38-1] at 1.  Ms. Bell called Mr. Grove while she was in the emergency

room and reported that her son was ill.  Depo. of Bell [33-1] at 40-41; Ex. 8 [38-8] at

1-3; *see* Decl. of Jack Grove [33-2] at 7; Ex. 7 [38-7] at 1.  Ms. Bell testified that she

told Mr. Grove that her "baby had the flu and the doctor put [her] out. So he was

very aware that [she] wasn't coming back to work, because [her] baby was sick."

Depo. of Bell [33-1] at 40-41.  She further testified that she informed Mr. Grove that

"she wouldn't be able to return the 18 or the 19" to work because she had to care for

her son.  *Id.*

Ms. Bell's son was discharged from the hospital the same day, Ex. 9 [38-9] at

1, and the physician, Rachel Keaton, stated in the physician's clinic note that Ms.

Bell's son should not attend school from February 18 to February 22, Ex. 9 [38-9] at

1.  The note further detailed that Ms. Bell was at the Memorial Emergency

Department with her son, and that she should be excused "from work through the

above dates" because the "[p]atient will need caregiver [sic], since he will not be

allowed back to school due to illness."  *Id.*  The discharge follow-up instructions

required Ms. Bell to follow up with the primary care provider on February 18, 2019.

*Id.* at 2.  It is undisputed that Ms. Bell did not contact Mr. Grove again to inform

him of the outcome of her son's visit to the hospital, nor did she ever communicate

the content of the physician's clinic note to Gulfport Care.

During Ms. Bell's Deposition [33-1] in this case, the following exchange

occurred regarding her call with Mr. Grove:

Q. Did you tell him when you would be able to return to work?

A. I -- well, I told him that they have me out until -- I told him I wouldn't be able to return the 18 or the 19. I think that's what I -- I think that's what I told him. I won't be able to return the 18 or 19. I was scheduled to work the 18 and 19 for sure. So I told him I wasn't returning back to work.

Q. So you would not be working on the 18 or the 19?

A. Yes, because my baby had the flu and the doctor put me out. So he was very aware that I wasn't coming back to work, because my baby was sick.

Q. Did you tell him anything else?

A. Like what? I told him that the doctor put me out, put me out of work.

Q. Okay. And so you were scheduled that Monday and Tuesday?

A. Yes. They called me Wednesday the 20 and terminated me.

* * *

Q. And what did he say?

A. He said that he's calling to -- I don't remember exactly what he said, but I remember that he said that, you know, he was calling to terminate me and I asked him -- I remember asking him why. And he said for excessive missed days. And I said, Well, my baby's been sick. He said, No, no, no, not for that, not for that. Excessive – you've missed excessive days. And I was like, okay. I was stunned. I was shocked, and I just, you know, ended the conversation. I was just -- I was shocked because I was terminated. Like, what for?

Q. So he just told you were being terminated for excessive missed days?

A. Yes.

Q. And you said you didn't say anything in response?

A. Well, I asked him, you know, what for? And he said -- I said I have a -- I told him -- you know, I mentioned the doctor's excuse then. I said, I have a doctor's excuse to be out of work. My baby was sick. So what days -- what days did I miss that's excessive? And he said, No, I'm not talking about that. It's you have excessive missed days, to that effect.  He was telling me that, you know, really, this is my decision.

8

* * *

Q. So when you spoke to Jack on that Saturday, February 16, you did not ask Jack Grove -- you did not request FMLA leave; is that correct?

A. No. I didn't request FMLA leave because it was sudden, my baby got sick, you know. . .

Q. And you didn't tell him that you believed that the absences for your son's illness were FMLA leave eligible?

A. No. I didn't tell him that, no

* * *

Q. You didn't mention the word FMLA?

A. No.

* * *

Q. Okay. And I want to make clear for the record, until you sent the records related to your son's trip to the ER, to MDES, these records were never provided to Gulfport Care Center?

A. Well, I never did get a chance to provide my baby's doctor's excuse, because I was out. They fired me on the 20.

Depo. of Bell [33-1] at 4-64.

Ms. Bell did not contact Mr. Grove on February 18, 19, or 20, to update him on the contents of the physician's discharge note, nor did she contact Mr. Grove or anyone from Gulfport Care at any time between her call from the emergency room on February 16 or beyond to inform Gulfport Care of any intent to request FMLA leave. *See* Ex. B-10 [33-2] at 63; Depo. of Jack Grove [33-3] at 31. According to Mr. Grove's Declaration, on February 20, 2019, he and Ms. Poole terminated Ms. Bell because she "was absent without a proper excuse for five days over two consecutive periods. Gulfport Care determined Ms. Bell's excessive absences warranted her

9

third written warning, which result[ed] in terminat[ion] of employment."  Decl. of Jack Grove [33-2] at 7.

B.    Procedural background

On May 10, 2019, Ms. Bell filed a Complaint [1] in this Court, alleging that Gulfport Care wrongfully terminated her in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, et seq.  Compl. [1] at 1-3.  Ms. Bell alleges that her son "had a serious condition as defined by the FMLA," and that Gulfport Care interfered with her right to take FMLA leave when it terminated her for "having taken an FMLA qualif[ied] leave."  *Id*. at 2-3.  The Complaint [1] further alleges that Gulfport Care's discharge of Ms. Bell was "a willful, wanton violation of her FMLA rights."  *Id*. at 2.  Gulfport Care denied the allegations in its Answer [5] and raised several affirmative defenses.

On September 2, 2020, Gulfport Care filed the instant Motion for Summary Judgment [33], arguing that Ms. Bell cannot demonstrate that her termination violated the FMLA, and that Gulfport Care is entitled to judgment as a matter of law on all of Ms. Bell's claims.  Mot. [33].  Ms. Bell has filed a Response [38] in opposition to the Motion [33], and Gulfport Care has filed a Reply [40].

## II. DISCUSSION

A.    Summary judgment standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  If the movant carries this burden, to defeat summary judgment "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the non-moving party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011).  "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation marks omitted).

If the evidence is merely colorable, or not significantly probative, summary judgment is appropriate.  *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  In deciding whether summary judgment is appropriate, the Court views all facts and inferences in the light most favorable to the nonmoving party.  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

In a non-jury case, such as this one, "a district court has somewhat greater discretion to consider what weight it will accord the evidence." *Matter of Placid Oil*

*Co.*, 932 F.2d 394, 397 (5th Cir. 1991).  When deciding a motion for summary judgment prior to a bench trial, the Court "has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result."  *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010) (citing *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978)).

B.     The FMLA

Under the FMLA, employees are entitled to leave (1) for the birth of a child; (2) for the adoption of a child; (3) to care for certain family members who have a serious health condition; or (4) if the employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612.  Ms. Bell claims that Gulfport Care violated the FMLA by terminating her because she was entitled to leave under FMLA to care for her son's serious health condition.  P. Mem. [39] at 9.

Section 2615(a) of the FMLA creates two types of claims: (1) *interference* claims, in which an employee asserts that her employer denied or otherwise interfered with her substantive rights under the Act, and (2) *retaliation* claims, in which an employee asserts that the employer discriminated against her because she engaged in activity protected by the Act.  29 U.S.C. § 2615(a)(1) and (2).

Interference claims do not require a showing of discriminatory or retaliatory intent, whereas retaliation claims do.  *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 349 (5th Cir. 2013) (J. Elrod, concurring).  Under either theory, however, an

employer does not violate the FMLA for failing to reinstate a plaintiff to her former position if the employee would have been let go even if she had not taken the leave and the termination decision was unrelated to the leave request. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 764 (5th Cir. 2001); *see Cuellar*, 731 F.3d at 351 (noting that the critical inquiry is "whether [the claim] arises from the deprivation of an [employee's] FMLA entitlement or from punishment exacted for her exercise of an FMLA right").

The parties disagree on whether Ms. Bell is alleging a retaliation or an interference claim. Relying on *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 489 (5th Cir. 2018), Gulfport Care contends that Ms. Bell cannot recover under any FMLA theory unless she can show that Gulfport Care terminated her for a retaliatory reason. D. Mem [34] at 18-19; Reply [40] at 2. Ms. Bell counters that she has raised an interference claim, which does not require a showing of an employer's wrongful intent, and that she is not pursuing a retaliation claim.[4] P. Mem. [39] at 2. In Reply [40], Gulfport Care contends that its arguments apply to both types of claims, and that Ms. Bell cannot establish either under the FMLA. *Id.* at 7.

The Court observes that the allegations in the Complaint [1] are ambiguous enough to encompass both a retaliation and an interference claim under the FMLA. *See* Compl. [1] at 2 ("[T]he defendant's termination of plaintiff was based in whole

---

[4] Although the Complaint [1] is ambiguous on whether Ms. Bell is alleging an interference claim under 29 U.S.C. § 2615(a)(1) or a retaliation claim under 29 U.S.C. § 2615(a)(2), in her Memorandum [39] in Response to the Motion [33] for Summary Judgment, Ms. Bell states that she "never pled a retaliation claim and therefore does not contest summary judgment on that issue." P. Mem. [39] at 2.

13

or in part on her having taken an FMLA-qualifying leave"); *id*. ("Gulfport Care Center's discharge of the plaintiff was a willful, wanton violation of her FMLA rights"); *see also DeVoss*, 903 F.3d at 491 ("[T]he nature of the claim is more important than the label it is given").  However, because Ms. Bell does not contest summary judgment on any FMLA retaliation claim, Gulfport Care is entitled to summary judgment on this claim to the extent that the pleadings could be read to assert one.

C.    Ms. Bell's interference claim under Section 2615(a)(1)

To support an interference claim under 29 U.S.C. § 2615(a)(1), Ms. Bell "must at least show that [Gulfport Care] interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights, and that the violation prejudiced her." *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015) (quoting *Cuellar*, 731 F.3d at 347).

To establish a *prima facie* case of interference, Ms. Bell must show that: (1) she was an eligible employee; (2) Gulfport Care was subject to the FMLA's requirements; (3) she was entitled to leave; (4) she gave proper notice of her intention to take FMLA leave; and (5) Gulfport Care denied her the benefits to which she was entitled under the FMLA.  *See Burris v. Brazell*, 351 F. App'x 961, 963 (5th Cir. 2009) (per curiam) ("To make a prima facie case for interference with FMLA rights, [the plaintiff] must first demonstrate that she took leave that was protected under the FMLA.") (citing *Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 580 (5th Cir. 2006)).

14

The parties do not dispute that Ms. Bell was an eligible employee and that Gulfport Care was subject to the FMLA.  The crux of the parties' arguments turns on the third, fourth, and fifth elements: whether Ms. Bell was entitled to FMLA leave, whether Ms. Bell provided sufficient notice to Gulfport Care regarding her intention to take FMLA leave, and whether Gulfport Care denied Ms. Bell FMLA-qualifying leave.

Ms. Bell argues that Gulfport Care was aware that she would miss work on February 18 and 19, 2019, because she called Mr. Grove from the emergency room on February 16, 2019, and informed him that her son was sick, and that she would miss work on February 18 and 19.  P. Mem. [39] at 4.  She maintains that this communicated sufficient information to Gulfport Care that she was taking FMLA leave.  P. Mem. [39] at 4.  Gulfport Care counters that Ms. Bell failed to provide sufficient notice that she was taking FMLA leave to care for her son, and that she violated its usual and customary notice and procedural requirements, depriving her of the protections of the FMLA.  D. Mem. [34].

While an employee has the right to take leave under the FMLA, "the employee must give [her] employer notice of [her] intention to take leave in order to be entitled to it."  *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017). The Fifth Circuit has declined to issue any "categorical rules" for the type of notice that must be given by an employee, but has stated that: "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition."

15

*Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995).  "The employee must provide such information about her condition as will make it evident that the FMLA is implicated."  *Towns v. Ne. Mississippi Elec. Power Ass'n*, 478 F. App'x 244, 247 (5th Cir. 2012).

The term "serious health condition" is defined in relevant part as "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider."  *Seaman v. CSPH, Inc.*, 179 F.3d 297, 302 (5th Cir. 1999) (citing 29 U.S.C. § 2611(11)).  The regulations promulgated by the United States Department of Labor define "continuing treatment by a health care provider," in pertinent part as:

> [a] period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treat ment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition . . .

29 C.F.R. § 825.114(a)(2)(i).

When the need for leave is foreseeable, the employee generally must "provide the employer with [30] days of notice."  *Towns*, 478 F. App'x at 246 (quoting 29 C.F.R. § 825.302(a)).  If 30 days of notice is not practicable, notice must be given "as soon as practicable."  *Id.*  In all instances, "an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances."  *Acker*, 853 F.3d at 788 (quoting 29 C.F.R. § 825.302(d)).  "Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the

failure to comply, FMLA protected leave may be delayed or denied." *Id.* at 789

(quoting 29 C.F.R. § 825.302(d)).

"[A]n employer generally does not violate the FMLA if it terminates an

employee for failing to comply with a policy requiring notice of absences, even if the

absences that the employee failed to report were protected by the FMLA." *Acker*,

853 F.3d at 789.  Discipline resulting from an employee's failure to comply with the

usual and customary procedures for requesting FMLA leave does not constitute

interference with the exercise of FMLA rights, unless the employee can show

unusual circumstances.  *Id.*  "Formal notice-of-absence policies serve an employer's

legitimate business interests in keeping apprised of the status of its employees and

ensuring that it has an adequate workforce to carry out its normal operations." *Id.*;

*see Goff v. Singing River Health Sys.*, 6 F. Supp. 3d 704, 707 (S.D. Miss. 2014)

(granting summary judgment in a FMLA case where no unusual circumstances

excused an employee's failure to timely notify the employer).

As to the required content of the notice when the need for leave is

unforeseeable,

> [a]n employee shall provide sufficient information for an employer to
> reasonably determine whether the FMLA may apply to the leave
> request. Depending on the situation, such information may include . . .
> whether the employee or the employee's family member is under the
> continuing care of a health care provider; . . . or if the leave is for a family
> member that the condition renders the family member unable to
> perform daily activities . . .; and the anticipated duration of the absence,
> if known. When an employee seeks leave for the first time for a FMLA-
> qualifying reason, the employee need not expressly assert rights under
> the FMLA or even mention the FMLA. . . Calling in "sick" without
> providing more information will not be considered sufficient notice to
> trigger an employer's obligations under the Act. . . .

29 C.F.R. § 825.303(b).

In order to show adequate notice as part of her interference claim, Ms. Bell must demonstrate that she provided sufficient notice to Mr. Grove during her phone call on February 16 that she was taking FMLA leave to care for her son, or that she followed Gulfport Care's procedures for requesting FMLA-qualifying leave.

1.  Whether Ms. Bell's phone call on February 16 provided sufficient information to Mr. Grove that she was requesting FMLA-qualifying leave

The Fifth Circuit addressed the sufficiency of notice requirement for an interference claim in *Lanier v. Univ. of Texas Sw. Med. Ctr.*, 527 F. App'x 312 (5th Cir. 2013). In *Lanier*, plaintiff sent a text message to her supervisor "to inform him her father was in the emergency room and that she would be unavailable to be on call that night." *Id.* at 314. Following an unrelated incident, plaintiff was terminated, and she subsequently brought suit alleging, among other things, violations of FMLA. *Id.* The Fifth Circuit rejected plaintiff's contention that the employer "should have inquired further since he knew that [plaintiff's] father was over 90 years of age and in poor health. . . ." *Id.* The court held that plaintiff's text message to her supervisor stating that her father was in the emergency room, and that she was not able to make her on-call shift, was insufficient to place the supervisor on notice that the employee was requesting FMLA leave to care for her father. *Id.* at 315. The court found that based on the content of the text message, it would be unreasonable to expect the employer to know that the plaintiff meant to request FMLA leave. *Id.* at 316-17.

18

Ms. Bell's situation resembles that presented in *Lanier*. Her phone records reflect that she called Mr. Grove on February 16, 2019. Ex. 7 [38-7]. Ms. Bell testified that during the phone call with Mr. Grove:

> A. I -- well, I told him that they have me out until -- I told him I wouldn't be able to return the 18 or the 19. I think that's what I -- I think that's what I told him. I won't be able to return the 18 or 19. I was scheduled to work the 18 and 19 for sure. So I told him I wasn't returning back to work.

Depo. of Bell [33-1] at 4-64. Ms. Bell testified that her "baby had the flu and the doctor put [her] out," and that "[Mr. Grove] was very aware [she] wasn't coming back to work, because [her] baby was sick." *Id.* at 50. Ms. Bell argues that this was sufficient information to notify Gulfport Care that "[she] had a right under the FMLA to take leave to care for her son." P. Mem. [39] at 9. However, it is undisputed that Ms. Bell did not convey at any point that any subsequent or follow up treatments were to be required or that her son was suffering from anything other than a bout with the flu.

While the employer "designate[s] leave as FMLA-qualifying," 29 C.F.R. § 825.301(a), the employee "*must* explain the reasons for the needed leave so as to allow the employer to determine whether the leave qualifies under the Act," *id.* at § 825.301(b) (emphasis added); *see also Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 419 (5th Cir. 2006). Although an employee need not expressly invoke her rights under the FMLA, she still must provide sufficient information to reasonably apprise the employer that the request for time off is due to a serious health condition. *See* 29 C.F.R. § 825.301(b); *see*, *e.g.*, *Greenwell v. State Farm Mut. Auto. Ins. Co.*, 486 F.3d 840, 843 (5th Cir. 2007) (an employee's phone call "merely

19

alleging sickness as the reason for her absence does not automatically provide sufficient FMLA-notice"); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 302 (5th Cir. 1999) (employee's reference to his mental condition during a conversation with his employer did not constitute the requisite notice of an intent to invoke FMLA leave); *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir. 1998) (the "meager" information in a letter provided to the employer concerning the employee's alleged illness was insufficient notice under the FMLA).

Although Mr. Grove was made aware on February 16 that Ms. Bell's son had the flu and that she was not coming to work on February 18 and 19, nothing about the content of Ms. Bell's phone call or the other undisputed record evidence indicates that Ms. Bell imparted sufficient information to Mr. Grove for him to understand that her son was suffering a serious health condition or that she intended to invoke FMLA-qualifying leave. As in *Lanier*, the only advance information Ms. Bell provided Mr. Grove during the phone call was that a relative (her child) had been admitted to the emergency room. She said that he was sick with the flu and that she was not able to come to work on February 18 and 19. *See* Depo. of Bell [33-1] at 50. However, simply referencing that her child had the flu on February 16 does not create a reasonable inference that Ms. Bell was requesting FMLA leave for those two days, nor that she could not communicate to Gulfport Care during the interim of her intent to take FMLA-qualifying leave. *See* 29 C.F.R. § 825.303(b) (noting that "[c]alling in 'sick' without providing more information will

not be considered sufficient notice to trigger an employer's obligations" under the FMLA).

Moreover, Ms. Bell has adduced no evidence of any unusual circumstances why she could not have contacted Gulfport Care between February 16 and February 20 to inform it of the contents of the physician's note or that she was requesting FMLA-qualifying leave. Requiring Mr. Grove to connect the pieces of this puzzle would have demanded a degree of clairvoyance that is, quite simply, not imposed upon employers by the FMLA. *See Satterfield*, 135 F.3d at 980 (an employee's note requesting a day off due to pain was insufficient to reasonably apprise the employer of employee's request to take time off for a serious health condition); *Greenwell*, 486 F.3d at 844 (employee did not request FMLA leave after notifying employer of unforeseeable absence and explaining only that her son had been injured while playing). Ms. Bell did not volunteer any additional information about her son's health condition, and the information Ms. Bell communicated to Mr. Grove during the February 16 phone call was insufficient to place him on notice that she was requesting FMLA leave for February 18, 19, or beyond. *See Lanier*, 527 F. App'x at 316-17.

2.   Whether Ms. Bell complied with Gulfport Care's procedures in requesting
     FMLA-qualifying leave and thereby established notice under the FMLA

With respect to the FMLA, Gulfport Care required its employees to make a "leave request to [employee's] supervisor at least 30 days in advance of the date leave is to begin, unless such notice is not practicable because of the circumstances, and then [employee] must give notice as soon as possible." Ex. B-1 [33-2] at 14. The

Handbook further provides that when an employee must take leave not otherwise covered, the employee may request leave and Gulfport Care can, in its discretion, permit it.  Decl. of Jack Grove [33-2] at 2.  Gulfport Care requires its employees to call "in two hours prior to the shift" when an employee plans on not coming into work.  *Id*. at 3.  The Handbook further notes that termination of employment can result for any company violation, including "[o]ne unexcused absence from work without notice," as well as "habitual absence or tardiness, even if excused."  *Id*.

Although Ms. Bell testified that she informed Mr. Grove that she would not return to work on February 18 or 19, Ms. Bell acknowledged that Gulfport Care does not "have to assume or read [her] mind that [she] needed FMLA leave."  Depo. of Bell [33-1] at 66.  Ms. Bell was not exempt from following Gulfport Care's procedures, and it would be unreasonable to expect Mr. Grove to know Ms. Bell meant to request FMLA leave based solely on the phone call on February 16.  The proffered evidence, considered at as a whole, does not suffice to raise an inference that Ms. Bell was requesting FMLA-qualifying leave for February 18, 19, or beyond.  This, coupled with Ms. Bell's history of excessive tardiness, absences, and disciplinary notices justified Gulfport Care's termination of Ms. Bell under its policies.

Finally, the Court turns to whether any "unusual circumstances" may have justified Ms. Bell's noncompliance with Gulfport Care's internal procedures.[5]  It is

---

[5] The FMLA does not define "unusual circumstances."  *See Meisinger v. Wal-Mart Assocs., Inc.*, No. 5:17CV103-JRG-CMC, 2018 WL 5726232, at *13 (E.D. Tex. Aug. 1, 2018).  However, 29 C.F.R. § 825.303(c) provides an example of an unusual circumstance: "However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until

undisputed that Ms. Bell had twice successfully requested FMLA leave, *see* Depo. of Bell [33-1] at 66-67, and that she was familiar with the procedures for requesting FMLA leave.  Even though Ms. Bell was familiar with Gulfport Care's policies for requesting FMLA leave, she did not follow them here.  *See* Depo. of Bell [33-1] at 66-67; Decl. of Jack Grove [33-2] at 15; Ex. B-6 [33-2] at 31-37.  At the time of her absences, Ms. Bell further did not explain what "unusual circumstances" prevented her from calling Mr. Grove at any point after February 16 or beyond to inform him of her need for FMLA leave to care for her son.  Gulfport Care's call-in procedure is not a pre-requisite to entitlement of FMLA leave, but rather it sets forth the obligations of employees who are on leave, regardless of whether that leave is pursuant to the FMLA.  *See* Ex. B-2 [33-2] at 23.  The undisputed evidence reflects that Ms. Bell's son was discharged from the emergency department on February 16, the same day Ms. Bell called Mr. Grove, Ex. 8 [38-8] at 1-3, and no evidence has been submitted that Ms. Bell was unable to make any phone calls to Gulfport Care after February 16.  Ms. Bell has not shown any "unusual circumstances" that would excuse her noncompliance with Gulfport Care's procedures.[6]

---

his or her condition is stabilized and he or she has access to, and is able to use, a phone."  29 C.F.R. § 825.303(c).  Courts have deemed circumstances "unusual" when the medical condition or illness prevents compliance with normal procedures.  *See, e.g., Howard v. VT Halter Marine, Inc.*, No. 1:10CV327 LG-RHW, 2011 WL 2414672, at *4 (S.D. Miss. June 10, 2011) (the employee cannot access a phone); *Flores v. Murphy Co.*, 2014 WL 584553, at *6 (D. Or. Feb. 12, 2014) (the employer's policies conflict with the law); *Uselton v. CSX Transp., Inc.*, No. 3:13-CV-00349, 2014 WL 4388272, at *2 (N.D. Ohio Sept. 5, 2014) (the employer has misled the employee in some way regarding the proper procedures).

[6] Because Ms. Bell has not carried her *prima facie* burden on whether she provided sufficient notice to Gulfport Care of her intent to take FMLA leave or whether she was entitled to FMLA leave, the Court need not address the fifth element of the FMLA interference claim regarding whether Ms. Bell was denied benefits to which she was entitled under the FMLA.

23

Viewing the facts and inferences in the light most favorable to Ms. Bell, she has not shown that she was entitled to FMLA leave on February 18, 19, or beyond, nor has she shown adequate notice to her employer of any need for FMLA-qualifying leave on these days.  Ms. Bell has not carried her *prima facie* burden regarding her FMLA interference claim, and Gulfport Care is entitled to summary judgment on this claim.

D.     Ms. Bell's retaliation claim under Section 2615(a)(2)

Because Ms. Bell states in her Memorandum [39] in Response to the Motion [33] that she never alleged a FMLA retaliation claim and does not contest summary judgment on this issue, Gulfport Care's Motion should be granted on this claim.

Nevertheless, out of an abundance of caution, to the extent that the Complaint [1] could be read to allege that Gulfport Care terminated Ms. Bell because she took—or attempted to take—FMLA leave to care for her son, Ms. Bell's claim would be subject to the FMLA retaliation framework.  Gulfport Care contends that it terminated Ms. Bell because of her previous, repeated violations of its policies, which contributed to her third write up within twelve months and resulted in her termination.  D. Mem. [34]; *see* Decl. of Jack Grove [33-2] at 7.

To establish a *prima facie* retaliation claim under 29 U.S.C. § 2615(a)(2), Ms. Bell must show that: (1) "[she] was protected under the FMLA; (2) [she] suffered an adverse employment decision; and either (3a) that [she] was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse

decision was made because [she] took FMLA leave." 29 U.S.C. § 2615(a)(2); *see Elsensohn v. St. Tammany Par. Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008).

Once Ms. Bell has established a *prima facie* case, the burden shifts to Gulfport Care to demonstrate a legitimate, nonretaliatory reason for the employment decision. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005). Ms. Bell must then show either: (1) that Gulfport Care's reason is a pretext for retaliation; or (2) that it had a retaliatory motive in addition to its legitimate reason. *Id.*

Gulfport Care agrees that Ms. Bell has abandoned "her FMLA retaliation claim and pursues only an interference claim," Reply [40] at 1, but it contends that "regardless of the label that Bell attaches to her claim," she fails to show that it had a retaliatory motive in terminating her, *id.* at 3. Gulfport Care also asserts that it "offered a legitimate, non-discriminatory reason for Bell's termination: Bell's violation of company policies, and specifically, her violation of the attendance policy." *Id.*

As to the first element of a *prima facie* retaliation claim, the FMLA provides leave to eligible employees: (1) for the birth of a child; (2) for the adoption of a child; (3) to care for certain family members who have a serious health condition; or (4) if the employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612. The FMLA's retaliation provision makes it unlawful for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice

25

made unlawful by [the FMLA]."  *Id.* at § 2615(a)(2); *see also* 29 C.F.R. § 825.220(c) (FMLA prohibits employers from "retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights").  In addition, employees seeking FMLA leave must provide "a qualifying reason" for the needed leave.  29 C.F.R. § 825.301(b).  FMLA provides relief only when an employee asserts a claim based on FMLA leave that the employee was actually entitled to take.  *See Lanier*, 527 F. App'x at 317 (plaintiff's text message to the employer did not provide sufficient notice of her intent to take FMLA leave and thus she was not engaged in a protected activity under the FMLA).

The protected activity alleged by Ms. Bell in her Complaint [1] is her taking FMLA leave to take care of her son.  However, as discussed above, *see supra* Section C(1), Ms. Bell did not provide Gulfport Care with the proper notice of her intent to take FMLA leave to care for her son.  *See* Ex. B-10 [33-2] at 63.  Because Ms. Bell's communication stating that she would miss two days of work to care for her son was not a proper request for FMLA-qualifying leave, she did not engage in an activity afforded the protection of the FMLA.  *See* 29 C.F.R. § 825.302(d) (noting that the regulation explicitly permits "employers to condition FMLA-protected leave upon an employee's compliance with the employer's usual notice and procedural requirements, absent unusual circumstances"); *Lanier*, 527 F. App'x at 317 (holding that "[b]ecause . . . [plaintiff] failed to provide evidence that she engaged in protected activity, [the court] affirm[ed] . . . summary judgment on [the retaliation] FMLA claim").

Viewing the facts and drawing all reasonable inferences in favor of Ms. Bell as the nonmoving party, she cannot establish the first element of her *prima facie* case.  For these reasons as well, Gulfport Care is entitled to summary judgment on any FMLA retaliation claim Ms. Bell may be asserting.

### III.  CONCLUSION

Because the record evidence presented to the Court at a non-jury trial could not, in the Court's view, lead to a different result, Gulfport Care's Motion for Summary Judgment [33] should be granted.  To the extent the Court has not specifically addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Gulfport Healthcare, LLC d/b/a Gulfport Care Center's Motion for Summary Judgment [33] is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Shawnika Bell's claims against Defendant Gulfport Healthcare, are **DISMISSED WITH PREJUDICE**.  A separate final judgment will be entered pursuant to Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 11th day of January, 2021.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE